```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
UNITED STATES OF AMERICA,                     :
                                              :
            v.                                :
                                              :
MARIO ANTONIO JAVIER MORFFE,                  :
                                              :
                        Defendant.            :
----------------------------------------------------------------X
```

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ APR 0 7 2017 ★
BROOKLYN OFFICE

**MEMORANDUM & ORDER**
16-CR-0083 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On September 20, 2016, Mario Antonio Javier Morffe ("Defendant"), pleaded guilty to one count of Importation of Cocaine, in violation of 21 U.S.C. § 952(a) and 21 U.S.C. § 960(a)(1). The Court now sentences the defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, the defendant is hereby sentenced to 12 months and 1 day of incarceration and a $100.00 special assessment.

## BACKGROUND

On January 29, 2016, the United States filed a Complaint against Defendant alleging he had unlawfully imported cocaine, a Schedule II controlled substance, into the United States. Compl. at 1, ECF No. 1. The subsequent Indictment, filed on February 22, 2016, charged Defendant with two counts: (1) Importation of Cocaine, in violation of 21 U.S.C. § 952(a) and 21 U.S.C. § 960(a)(1); and (2) Possession of Cocaine with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C). Indictment at 1-2, ECF No. 5. On September 20, 2016, Defendant pleaded guilty to Count One of the Indictment pursuant to a Plea Agreement. *See* Plea Agreement, ECF No. 17.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### II. Analysis

#### A. Factor One: The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born in Santo Domingo, Dominican Republic, on March 21, 1979, to unmarried parents. Presentence Investigation Report ("PSR") ¶ 27, ECF No. 18. Defendant's father broke up with Defendant's mother during her pregnancy for reasons unknown to Defendant, and Defendant has never met his father. *Id.* Defendant and his half-brother were

raised by his mother "under impoverished economic conditions," but Defendant reported having had a normal childhood. *Id.* ¶ 28. When Defendant was eleven years old, his mother married Matias Aybar, with whom Defendant also maintains a good relationship. *Id.* ¶ 29; *see also* Def.'s Sentencing Mem. at 1–2 n.2, ECF No. 20 (noting correct spelling of Defendant's stepfather's name). Indeed, Defendant maintains "close and loving relationships with all family members," including his mother, "who continues to reside in the Dominican Republic, [and] suffers from diabetes, depression, and financial problems." PSR ¶ 27.

Defendant has "had to stop studying periodically due to various life occurrences," but he obtained his high school diploma in 1997 and took classes toward his bachelor's degree—which he has yet to earn—from 1998 to 2015. PSR ¶ 37; *see also* Def.'s Sentencing Mem. at 1–2 n.2 (explaining Defendant "needs to complete five more semesters" to obtain his degree). Defendant does, however, have a lengthy employment history: Between 1992 and 2007, he worked as a salesperson for an office supplies distributor; a switchboard operator; a salesperson for a cellular telephone dealer; a factory employee for a pharmaceuticals manufacturer; and an accounting employee for an electrical generator plant. PSR ¶ 43. From 2007 to 2014, he worked in the accounting department for a company that "handled franchises for supermarkets, toy stores, and hardware stores," but he resigned after his immediate supervisor blocked his promotion. *Id.* ¶ 42. Prior to his arrest, Defendant was working as a salesperson at a wholesale pharmaceuticals distributor in which capacity he was earning between 25,000 and 50,000 Dominican pesos a month, depending on commission. *Id.* ¶ 41.

From 2003 to 2007, Defendant was in a long-term romantic relationship with Betzaida Pilarte. *Id.* ¶ 30. Defendant and Ms. Pilarte had a son, who is about twelve years old and suffers

from Down syndrome. *Id.* Prior to his arrest, Defendant saw his son every two weeks and provided 2,000 Dominican pesos in court-ordered support each month. *Id.* Ms. Pilarte reportedly "was upset to learn of the defendant's arrest because she is now not receiving financial support" and "is experiencing financial difficulties." *Id.* In August 2008, Defendant married Yassmine Ramirez. *Id.* ¶ 31. The couple have a child together who is currently about nine years old. *Id.* Defendant and Ms. Ramirez divorced in 2014 "because they were not getting along anymore," but they maintain an "amicable" relationship. *Id.* Prior to his arrest, Defendant also provided financially for his son with Ms. Ramirez. *Id.*

On January 29, 2016, Defendant traveled to John F. Kennedy International Airport ("JFK") in Queens, New York, on a regularly scheduled flight from Santo Domingo, Dominican Republic. *Id.* ¶ 3. This was his third trip to the United States,[1] and he planned to visit friends in Utica, New York, and Bronx, New York. *Id.* ¶¶ 5–6. Prior to the trip, "a female friend" of Defendant asked him to bring three wooden mortar-and-pestle sets from the Dominican Republic to her house in Bronx, New York. *Id.* ¶ 5. The female friend "arranged for an unknown male" to drop the mortar-and-pestle sets off with Defendant the night before he traveled to JFK.[2] *Id.* Defendant took pictures of the sets and sent them to his female friend. *Id.*

---

[1] No information was made available to Probation Services about the reasons for Defendant's prior travel to the United States, as Defendant's counsel "precluded the defendant from discussing the instant offense and would not allow the defendant to answer" further inquiries about that travel. PSR ¶ 6. At sentencing, however, Defendant represented to the Court that his prior two trips had been recreational trips to visit friends, and that he had not brought drugs into the country.

[2] Defendant initially stated that he was not going to receive any payment for bringing the mortar-and-pestle sets to New York; rather, he considered this to be a favor for a friend. PSR ¶ 5. He also reported that when he received the sets, he thought they seemed unusually heavy, but he did not know they contained drugs. *Id.* He later clarified to the court, when he pleaded guilty and again at sentencing, that he did know the mortar-and-pestle sets contained drugs and that he expected to receive between $2,000 and $3,000 for delivering the drugs.

4

Upon Defendant's arrival at JFK, he was selected for an enforcement examination by U.S. Customs and Border Protection ("CBP") officers. *Id.* ¶ 3. Suspicious of how heavy the mortar-and-pestle sets were, the CBP officers probed them and ultimately found cocaine in all three mortars and two of the pestles. *Id.* Defendant was placed under arrest and his cellular phone and the $200 he had in his possession were confiscated. *Id.* ¶ 6. Defendant was advised of his *Miranda* rights, after which he agreed to speak with Homeland Security Investigations ("HSI") agents. *Id.* ¶¶ 5–6. During that interview, Defendant was questioned, *inter alia*, about "pictures of prior law enforcement seizures of cocaine pellets" found on Defendant's phone. *Id.* ¶ 5. Defendant explained that his female friend had sent the pictures "because he wanted to bring Mama Juana (a rum/red wine drink) to the United States, and his friend told him that people who had brought Mama Juana had been stopped with it because they had smuggled drugs inside it," but that he did not know how his friend had gotten the pictures. *Id.* Defendant was incarcerated from the date of his arrest to March 3, 2016, when he was released on a $50,000 Personal Recognizance Bond with Pretrial Services reporting requirements. *Id.* at 1. To date, Defendant has fully complied with all reporting requirements. *Id.*

## B. Factor Two: The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence punishes Defendant for violating federal law and is crafted to deter him and others from engaging in similar criminal activity in the future. The Court takes into account Defendant's lack of criminal history and his need to continue supporting his family. The Court's sentence further recognizes both Defendant's minimal participation in the crime and the need to promote respect for the law.

### C. Factor Three: The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to Importation of Cocaine in violation of 21 U.S.C. § 952(a) and 21 U.S.C. § 960(a)(1), for which he faces a maximum term of imprisonment of twenty years. *See* 21 U.S.C. § 960(b)(3). If a term of imprisonment is imposed, the Court must also impose a term of supervised release of at least three years unless Defendant satisfies the mitigating factors in 18 U.S.C. § 3553(f), in which case the statutory minimum does not apply. *See* 21 U.S.C. § 960(b)(3). The mitigating factors are as follows:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware

of the information shall not preclude a determination by the court that the
defendant has complied with this requirement.

18 U.S.C. § 3553(f). Because the offense is a Class C felony, Defendant may also be sentenced to a term of probation of not less than one nor more than five years, with one of the following conditions, unless extraordinary circumstances exist: a fine, restitution, or community service. 18 U.S.C. § 3561(c)(1). Defendant also faces a maximum fine of $1,000,000.00, *id.* § 3571(b), and the mandatory special assessment of $100.00, *id.* § 3013.

### D. Factor Four: The Kinds of Sentence and the Sentencing Range Established For Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

Sentencing Guidelines § 2D1.1(a)(5) applies to violations of 21 U.S.C. § 952(a) and, per Guidelines § 2D1.1(c)(7), sets a base offense level of twenty-six. *See* United States Sentencing Commission, *Guidelines Manual*, § 2D1.1(a)(5), (c)(8) (Nov. 2016) ("USSG"). Defendant has satisfied all five of the factors outlined in 18 U.S.C. § 3553(f) and Guidelines § 5C1.2, however, so he is eligible for a two-level safety-valve reduction. USSG § 2D1.1(b)(17). Defendant was also a minimal participant in the offense, however, so a four-level reduction is applied. *Id.* § 3B1.2(a). Defendant's acceptance of responsibility by pleading guilty and his timely notification of his intent to do so permits a further reduction by three levels. *Id.* § 3E1.1. Accordingly, Defendant's total adjusted offense level is seventeen. Defendant does not have a criminal history, which results in a criminal history score of zero and a criminal history category of one. PSR ¶¶ 20–25.

With a total offense level of seventeen and a criminal history category of one, the Guidelines suggest a term of imprisonment of between twenty-four and thirty months. USSG ch. 5, pt. A. The Guidelines further recommend a term of supervised release of one to three years because Defendant has satisfied the 18 U.S.C. § 3553(f) mitigating factors, meaning no statutory minimum for supervisory release applies, *id.* § 5D1.2(a)(2); a fine of between $10,000.00 and $1,000,000.00, *id.* § 5E1.2(c); and payment of the costs of prosecution, *id.* § 5E1.5. Defendant is ineligible for probation under the Guidelines. *See id.* § 5B1.1 cmt. n.2.

### E. Factor Five: Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, which requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not applicable in this case.

### F. Factor Six: The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In considering the other six § 3553(a) factors, the Court's sentence sufficiently avoids unwarranted sentence disparities.

### G. Factor Seven: The Need to Provide Restitution

Finally, the seventh § 3553(a) factor, which requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is not applicable in Defendant's case, *see* 18 U.S.C. § 3663.

## CONCLUSION

A sentence of 12 months and 1 day of incarceration and payment of the $100.00 mandatory assessment, is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report.

**SO ORDERED.**

s/ WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 5, 2017
      Brooklyn, New York